UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL      'O'

| Case No. | 2:23-cv-09055-CAS(JPRx) | Date | April 15, 2024 |
|---|---|---|---|
| Title | Tom Lehman v. Medialab AI, Inc. et al. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Ethan Jacobs | Maurice Pessah |

**Proceedings:**    DEFENDANTS' MOTION TO DISMISS (Dkt. 26, filed on January 15, 2024)

## I. INTRODUCTION

Presently before the Court is defendants' motion to dismiss. Dkt. 26 ("Mot.").

On October 26, 2023, plaintiff Tom Lehman filed a complaint against defendants Medialab AI, Inc. ("Medialab"), Otin Holdings, LLC ("Otin Holdings"), Michael Heyward ("Heyward"), and Does 1-10 (collectively "defendants") alleging (1) breach of contract; (2) tortious interference with contract; and (3) fraud. Dkt. 3-1 ("Compl.").

On January 15, 2024, Heyward and Medialab filed the instant motion to dismiss or, in the alternative, to stay this action. Dkt. 26 ("Mot."). On February 5, 2024, plaintiff filed an opposition to the motion to dismiss. Dkt. 31-2 ("Opp."). On February 12, 2024, the moving defendants filed a reply. Dkt. 38 ("Reply").

On February 26, 2024, the Court reserved judgment on defendants' motion to dismiss pending the completion of jurisdictional discovery. On March 25, 2024, the Court held a status conference. Dkt. 45. At the status conference, the parties agreed that Otin Holdings' members are California residents. On the same day, defendant Otin Holdings filed a joinder to the motion to dismiss. Dkt. 44.

On April 15, 2024, the Court held a hearing. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL        'O'

| Case No. | 2:23-cv-09055-CAS(JPRx) | Date | April 15, 2024 |
|---|---|---|---|
| Title | Tom Lehman v. Medialab AI, Inc. et al. | | |

## II. BACKGROUND

Unless otherwise noted, the following facts are taken from plaintiff's complaint.

Plaintiff Tom Lehman is "an entrepreneur and businessperson" who lives in Germantown, New York. Compl. ¶ 7. Defendant MediaLab is a Delaware corporation with its headquarters in Los Angeles, California, and is "a holding company of consumer internet brands." Id. ¶ 8. Defendant Michael Heyward is the Chief Executive Officer of MediaLab and lives in Los Angeles, California. Id. ¶ 10. Defendant Otin Holdings is believed to be a Delaware limited liability company with no physical presence in any state. Id. ¶ 9. At the hearing, the parties confirmed that Otin Holdings' members are California residents. Defendants Doe 1-10 (the "Doe Defendants") are entities that loaned money to MediaLab. Id. ¶ 11.

In 2009, Tom Lehman co-founded Genius Media Group ("Genius") as "a website where users could read and decode intricate rap lyrics." Id. ¶ 20. In September 2021, Medialab acquired Genius for $80 million. Id. ¶ 22. As part of the acquisition, MediaLab granted Lehman shares of MediaLab stock. Id. ¶ 2. At or around the time of the acquisition, MediaLab created Otin Holdings to buy all of Lehman's MediaLab shares. Id. MediaLab also entered into two agreements with Lehman: a September 13, 2021 Put Agreement (the "Put Agreement"), and a September 13, 2021 Employment Agreement (the "Employment Agreement"). Id. ¶ 23.

The Put Agreement contains several relevant provisions. Section 1(a) of the Put Agreement "sets out [a] schedule under which Otin Holdings is obligated to purchase [] Lehman's shares of MediaLab's common stock at a pre-determined price," and required Otin Holdings to purchase "*all* shares currently owned by [] Lehman on September 13, 2023." Id. ¶ 35 (emphasis added). Section 3 obligated MediaLab to provide Otin Holdings with an irrevocable standby letter of credit to fund Otin Holding's purchase of MediaLab shares from Lehman. Id. ¶ 36. In Section 5, MediaLab provided a series of representations, including that "MediaLab shall take such necessary action to fund amounts drawn pursuant to the Letter of Credit." Id. ¶ 37. Plaintiff alleges that "[a]lthough Brad Brooks signed the Put Agreement on behalf of Otin Holdings, Section 7 of the Put Agreement identifies [] Heyward as the contact for Otin Holdings at MediaLab's physical address and at [] Heyward's MediaLab email address." Id. ¶ 42.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                   'O'

| Case No. | 2:23-cv-09055-CAS(JPRx) | Date | April 15, 2024 |
|---|---|---|---|
| Title | Tom Lehman v. Medialab AI, Inc. et al. | | |

Plaintiff alleges that Brooks is "Heyward's business partner and is a member of MediaLab's board of directors." Id. ¶ 43.

Before September 2023, MediaLab, rather than Otin Holdings, purchased Lehman's MediaLab shares according to the schedule and terms set out in Section (1)(a) of the Put Agreement.

In the Employment Agreement, MediaLab promised Lehman a retention bonus to be paid in four installments. Id. ¶ 26. While Medialab paid the first two installments, it did not make the third payment when the payment became due on March 13, 2023. Id. ¶ 28. When Lehman inquired about the missed payment, he was told that "MediaLab was in breach of a financial covenant and that its lenders therefore had told MediaLab not to pay [Lehman's] bonus." Id. ¶ 29. MediaLab informed Lehman that his payment "was contingent on MediaLab renegotiating the terms of its debt" and that it anticipated a "new agreement with its lenders would be executed the week of April 3, 2023." Id. ¶ 30.

On April 11, 2023, after Lehman found out that a new agreement had been executed, he followed up with Heyward to inquire about the payment. Id. On May 14, 2023, Heyward told Lehman that MediaLab was "prepared to pay [] Lehman in full in the next four weeks" or by September 13, 2023, at the latest. Id. ¶ 31. However, he refused to confirm this understanding in writing. Id.

On June 8, 2023, Lehman brought an arbitration before JAMS to enforce the Employment Agreement. Id. ¶ 33. Defendants claim that, in the arbitration, plaintiff "is alleging that MediaLab failed to pay Lehman's retention bonus arising out of the Employment Agreement." Opp. at 5. On August 8, 2023, Heyward agreed to purchase a portion of Lehman's MediaLab shares in exchange for Lehman staying his arbitration through September 13, 2023. Compl. ¶ 39.

On September 13, 2023, neither Otin Holdings nor Medialab purchased the remainder of Lehman's MediaLab shares. Id. ¶ 41. Lehman alleges that the amount Otin Holdings was supposed to pay Lehman for his remaining MediaLab shares is "more than $75,000." Id. MediaLab personnel have allegedly explained that, in 2023, MediaLab's lenders "directed MediaLab not to pay Mr. Lehman his third and fourth retention bonus payments and not to fund the repurchase of his remaining MediaLab shares." Id. ¶ 51.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**　　'O'

| Case No. | 2:23-cv-09055-CAS(JPRx) | Date | April 15, 2024 |
|---|---|---|---|
| Title | Tom Lehman v. Medialab AI, Inc. et al. | | |

On September 14, 2023, Lehman's counsel emailed Heyward demanding that Otin Holdings and MediaLab comply with their obligations under the Put Agreement to purchase Lehman's remaining shares and further "demand[ed] that Otin [Holdings] and MediaLab provide evidence that MediaLab issued the irrevocable standby letter of credit required under Section 3 of the Put Agreement." Id. ¶ 44. MediaLab again responded that "it could not fund the purchase of [] Lehman's MediaLab shares . . . because its debt covenants forbid it from doing so when its ratio of EBITDA to debt or to its debt payments falls below a certain threshold." Id. ¶ 46.

Plaintiff alleges that, prior to the effective date of the Put Agreement, "MediaLab agreed with its lenders that, as a condition of borrowing funds, MediaLab would breach its obligations to [] Lehman by refusing to fund the purchase of his shares whenever MediaLab was not sufficiently profitable." Id. ¶ 49. He further alleges that MediaLab and Heyward concealed this agreement from Lehman in order to induce Lehman to enter into the Put Agreement. Id. ¶ 51.

On September 25, 2023, Lehman provided notice to MediaLab that "its failure to pay his retention bonus was a breach of the Employment Agreement and that he would resign for 'Good Reason' after the 30-day cure period if MediaLab did not pay it." Id. ¶ 52. On October 25, 2023, Medialab emailed Lehman that it would be the last day of his employment. Id. ¶ 53.

### III. LEGAL STANDARD

#### A. Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss an action pursuant to Fed. R. Civ. P. 12(b)(1) raises the objection that the federal court has no subject matter jurisdiction over the action. This defect may exist despite the formal sufficiency of the allegations in the complaint. T.B. Harms Co. v. Eliscu, 226 F. Supp. 337, 338 (S.D.N.Y. 1964), aff'd 339 F.2d 823 (2d Cir. 1964). When considering a Rule 12(b)(1) motion challenging the substance of jurisdictional allegations, the Court is not restricted to the face of the pleadings, but may review any evidence, such as declarations and testimony, to resolve any factual disputes concerning the existence of jurisdiction. See McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:23-cv-09055-CAS(JPRx) | Date | April 15, 2024 |
|---|---|---|---|
| Title | Tom Lehman v. Medialab AI, Inc. et al. | | |

Once a Rule 12(b)(1) motion has been raised, the burden is on the party asserting jurisdiction. Sopcak v. N. Mountain Helicopter Serv., 52 F.3d 817, 818 (9th Cir. 1995); Ass'n of Am. Med. Coll. v. United States, 217 F.3d 770, 778-79 (9th Cir. 2000). If jurisdiction is based on a federal question, the pleader must show that he has alleged a claim under federal law and that the claim is not frivolous. See 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1350, pp. 211, 231 (3d ed. 2004). If jurisdiction is based on diversity of citizenship, the pleader must show real and complete diversity, and also that his asserted claim exceeds the requisite jurisdictional amount of $75,000. See id.

### B.     Federal Rule of Civil Procedure 12(b)(6)

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:23-cv-09055-CAS(JPRx) | Date | April 15, 2024 |
|---|---|---|---|
| Title | Tom Lehman v. Medialab AI, Inc. et al. | | |

"[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); see Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

### C. Federal Rule of Civil Procedure 9(b)

Federal Rule of Civil Procedure 9(b) requires that the circumstances constituting a claim for fraud be pled with particularity. Federal Rule of Civil Procedure 9(b) applies not just where a complaint specifically alleges fraud as an essential element of a claim, but also where the claim is "grounded in fraud" or "[sounds] in fraud." Vess v. Ciba-Geigy Corp. U.S.A., 317 F.3d 1097, 1103–04 (9th Cir. 2003). A claim is said to be "grounded in fraud" or "'sounds in fraud'" where a plaintiff alleges that defendant engaged in fraudulent conduct and relies on solely on that conduct to prove a claim. Id. "In that event, . . . the pleading of that claim as a whole must satisfy the particularity requirement of [Fed. R. Civ. P.] 9(b)." Id. However, where a plaintiff alleges claims grounded in fraudulent and non fraudulent conduct, only the allegations of fraud are subject to heightened pleading requirements. Id. at 1104.

A pleading is sufficient under Fed. R. Civ. P. 9(b) if it "[identifies] the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." Walling v. Beverly Enters., 476 F.2d 393, 397 (9th Cir. 1973).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:23-cv-09055-CAS(JPRx) | Date | April 15, 2024 |
|---|---|---|---|
| Title | Tom Lehman v. Medialab AI, Inc. et al. | | |

This requires that a false statement must be alleged, and that "circumstances indicating falseness" must be set forth. In re GlenFed Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994). Thus, Rule 9(b) requires a plaintiff to "identify the 'who, what, when, where and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent conduct], and why it is false." Cafasso, ex rel. United States v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting Ebeid ex rel. United States v. Lungwitz, 616 F.3d 993, 998 (9th Cir. 2010)).

## IV. DISCUSSION

Defendants argue that (1) the complaint should be dismissed because plaintiff has failed to plead diversity jurisdiction; (2) in the alternative, the fraud claim should be dismissed; (3) plaintiff has waived his right to a jury trial; and (4) in the alternative, this action should be stayed pending the completion of arbitration. The Court addresses each argument in turn.

### A. Diversity Jurisdiction

Defendants argue that plaintiff failed to plead an adequate amount in controversy.[1] Specifically, plaintiff alleges that "[t]he amount Otin Holdings was supposed to pay for [] Lehman's remaining MediaLab's shares is more than $75,000" but "d[oes] not indicate with any specificity the amount on the face of the [c]omplaint." Id. at 10 (citing Compl. ¶ 41).

In opposition, plaintiff contends that the existing allegations are sufficient to establish an amount in controversy over $75,000 but adds that "the exact amount claimed is just over $1 million, and [] Lehman can amend the Complaint to include additional allegations to that effect." Opp. at 8.

In the Ninth Circuit, courts apply the "legal certainty" test to determine whether the complaint meets § 1332(a)'s amount in controversy requirement. Naffe v. Frey, 789 F.3d 1030, 1039 (9th Cir. 2015). Under this test, "the sum claimed by the plaintiff

---

[1] Defendants also initially argued that plaintiff failed to establish complete diversity by failing to plead the citizenship of Otin Holdings' members. However, after the completion of jurisdictional discovery, the parties agreed that Otin Holdings' members are California residents. Plaintiff is a New York resident. Compl. ¶ 7. Accordingly, plaintiff has sufficiently established complete diversity between plaintiff and defendants.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            'O'

| Case No. | 2:23-cv-09055-CAS(JPRx) | Date | April 15, 2024 |
|---|---|---|---|
| Title | Tom Lehman v. Medialab AI, Inc. et al. | | |

controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." Id. at 1040 (internal quotation omitted). "Only three situations clearly meet the legal certainty standard: 1) when the terms of a contract limit the plaintiff's possible recovery; 2) when a specific rule of law or measure of damages limits the amount of damages recoverable; and 3) when independent facts show that the amount of damages was claimed merely to obtain federal court jurisdiction." Id.

The Court finds that the amount in controversy requirement has been met in this case. Plaintiff made a good faith claim that "[t]he amount Otin Holdings was supposed to pay for [] Lehman's remaining MediaLab shares is more than $75,000." Compl. ¶ 41. Plaintiff has further clarified that the amount is "just over $1 million," and defendant does not dispute this figure. Opp. at 8. Accordingly, the Court **DENIES** defendants' motion to dismiss for lack of subject matter jurisdiction.

### B. Fraud Claim

Defendants argue that the fraud claim should be dismissed because the complaint cites California rather than Delaware law. Mot. at 10. They note that Section 14 of the Put Agreement contains a Delaware choice of law provision:

> This Agreement shall be governed by and construed in accordance with the internal laws of the State of Delaware without giving effect to any choice or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of Laws of any jurisdiction other than those of the State of Delaware.

Id. at 11.

Defendants argue that plaintiff's fraud claim "is based on California Civil Procedure §§ 1572, 1709, and 1710" and accordingly must be dismissed. Id. (citing Compl. ¶ 14).

Defendants separately argue that plaintiff's fraud claim against Heyward fails because plaintiff has not pled "alter ego" liability against him. Mot. at 12. Defendants contend that plaintiff's claims "all arise out of the Put Agreement, to which [] Heyward is not an individual party." Id. They further claim that the complaint lacks any allegations that Heyward is the alter ego of MediaLab and "fails to even recite the bare bones

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          'O'

| Case No. | 2:23-cv-09055-CAS(JPRx) | Date | April 15, 2024 |
|---|---|---|---|
| Title | Tom Lehman v. Medialab AI, Inc. et al. | | |

elements of alter ego liability." Id. Moreover, the completely allegedly "fails to state any facts to justify piercing the corporate veil." Id. at 13.

    Defendants additionally argue that plaintiff's fraud claim fails under FRCP 9(b), Delaware law, and California law. Mot. at 14. Defendants contend that, pursuant to all three bodies of law, plaintiff must meet a higher pleading standard for allegations of fraud. Id. Here, plaintiff's allegations of fraud are allegedly "wholly conclusory and unsubstantiated by any specific factual details." Id. at 15. They note that plaintiff did not attach a copy of the Put Agreement to his complaint and does not specify which statements might constitute fraudulent "promises" by MediaLab, Otin Holdings, or Heyward. Id. To the extent that defendants "promised [] Lehman . . . that Otin Holdings would purchase [] Lehman's Medialab shares and that MediaLab would fund those purchases," defendants argue that plaintiff has "failed to specify which statements were materially false, when they were made, how they were made, who made them[,] and why the[y] were false." Id. Defendants further assert that the complaint does not make it clear whether any alleged misrepresentations or promises in the Put Agreement were also made in advance of the entry of the agreement. Id. at 16. They also assert that plaintiff has failed to plead facts demonstrating either justifiable reliance on defendants' promises or resulting damages, both elements of a fraud claim under Delaware law, beyond a "bare conclusory statement." Id. at 16-17 (citing Stephenson v. Capano Development, Inc., 462 A.2d 1069, 1074 (Del. 1983)).

    Finally, defendants argue that the fraud claim should be dismissed pursuant to California's economic loss rule. Mot. at 18. Specifically, they contend that "a party cannot seek damages that are purely economic for alleged 'fraud' based on acts that arise from an alleged breach of contract." Id. (citing Robinson Helicopter Co., Inc. v. Dana Corp., 34 Cal.4th 979, 988 (2004)). Here, plaintiff allegedly "replicates the same allegations of economic damage in its breach of contract claim . . . as in his [f]raud [c]laim." Id. at 19. Defendants assert that the "alleged harm–the non-purchase of shares 'as required by the Put Agreement'–constitutes the precise economic damages of breach of contract." Id. They additionally claim that the inducement exception does not apply because, here, the alleged misrepresentation that forms the basis of the fraud claim is "plainly that of the contract itself." Id. at 20 (internal quotations omitted).

    In opposition, plaintiff argues that the fraud claim should not be dismissed merely because of a reference to California's fraud statutes in the heading of the claim. Opp. at 8. He notes that "[b]oth [Delaware and California] have fraud causes of actions" and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          'O'

| | | | |
|---|---|---|---|
| Case No. | 2:23-cv-09055-CAS(JPRx) | Date | April 15, 2024 |
| Title | Tom Lehman v. Medialab AI, Inc. et al. | | |

contends that defendants failed to "identify any differences between the elements of promissory fraud under California and Delaware law." Id. Plaintiff also claims that defendants "skipped the choice of law analysis that determines whether [the Put Agreement's choice of law provision] should supersede California law for tort claims." Id. at 9. He asserts that defendants have not met their burden of "demonstrating that [Delaware] has a substantial relationship to the parties or their transaction, or that a reasonable basis otherwise exists for the choice of law." Id.

With respect to alter ego liability, plaintiff argues that his fraud claim against Heyward "does not rely on attributing MediaLab's conduct or liability to [Heyward]." Id. at 10. Rather, he contends that Heyward, "through his own conduct, and by authorizing MediaLab's conduct," "induced [plaintiff] to enter into the Put Agreement when MediaLab knew it did not intend to perform." Id. at 11. He alleges that Heyward affirmatively concealed MediaLab's "agree[ment] with its lenders to violate its obligations under the Put Agreement to fund the purchase of [plaintiff's] shares." Id. at 10.

Additionally, plaintiff asserts that the complaint adequately pleads promissory fraud. He claims that he was not obligated to attach the Put Agreement to the complaint and, regardless, "the Put Agreement is incorporated by reference into the Complaint." Id. at 12. Plaintiff has submitted the Put Agreement as an attachment with his opposition. Plaintiff also notes that FRCP 9(b) governs the pleading standard for fraud, not Delaware or state rules of procedure. Id. He contends that the complaint satisfies Rule 9(b)'s pleading requirements by "mak[ing] clear the who, what, where, and when of [d]efendant's fraud:"

> MediaLab, Otin Holdings, and [] Heyward knew at the time they induced [] Lehman to enter into the Put Agreement that MediaLab had promised or would soon promise MediaLab's lenders that MediaLab would not perform its obligations to [] Lehman under the Put Agreement unless MediaLab's EBITDA to debt or to debt payments ratio exceeded a certain threshold.

Compl. ¶ 70. The complaint additionally alleges that Medialab failed to issue a letter of credit to Otin Holdings, and Otin Holdings failed to demand one. Opp. at 15 (citing Compl. ¶¶ 44-45). Plaintiff alleges that he did in fact rely upon defendants' "representation that MediaLab intended to perform under the Put Agreement," and notes that "whether a party's reliance was reasonable is not generally suitable for resolution on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:23-cv-09055-CAS(JPRx) | Date | April 15, 2024 |
|---|---|---|---|
| Title | Tom Lehman v. Medialab AI, Inc. et al. | | |

a motion to dismiss." Id. at 15-16. With respect to damages, plaintiff claims that damages in a fraud claim "do not have to be pled with particularity . . . [and] can be pled generally." Id. at 16 (citing Swipe Acquisition Corp. v. Krauss, 2020 WL 5015863, at *9 (Del. Ch. Aug. 25, 2020)). He asserts that defendants "cite no authority suggesting that a promissory fraud claim cannot seek as damages the harm caused by the resulting breach of the promise," even if the harm is the same as the harm from the breach of contract claim. Id. at 16.

Finally, plaintiff claims that this case falls into the "exception to the economic loss rule for fraudulent inducement." Id. at 17 (citing Robinson Helicopter Co., v. Dana Corp., 34 Cal.4th 979, 990-91 (2004)). Moreover, he argues that the economic loss rule cannot apply to the fraud claim against Heyward because "[Heyward] is not a party to the Put Agreement" and is therefore not in privity with plaintiff. Id. at 19.

In reply, defendants again argue that plaintiff "fails to establish the requisite who/what/when of the [allegedly fraudulent] statement required to sustain [his] claim." Reply at 4. They contend that plaintiff does not specify "specific statement[s]" that each of the defendants made, "when the alleged promises were made, how they were communicated, and in what form." Id. They also claim that plaintiff fails to allege that defendants "*knew* that any representation they allegedly made was false, or *knew* that they did not intend to honor a promise, *at the time the representation or promise was made*." Id. (emphasis in original). Plaintiff also allegedly fails to "identify [MediaLab's] lenders" and "lacks specific facts showing [Heyward's] intent at the time" that Heyward allegedly "directed and supervised the fraud." Id. at 5. Defendants also again argues that the economic loss rule bars plaintiff's fraud claim because plaintiff "does not claim any harm above and beyond a contractual promise." Id. at 6. They assert that the lack of privity between plaintiff and Heyward does not preclude application of the economic loss rule because the "determinative factor is whether [p]laintiff has alleged harm beyond a broken contractual promise, not the relationship between the parties." Id.

"Federal courts deciding state law fraud claims look to state law for the elements of a fraud claim but also apply Rule 9(b)'s heightened pleading standard." Qbex Computadoras S.A. v. Intel Corp., No. 17-CV-03375-LHK, 2017 WL 5525939, at *5 (N.D. Cal. Nov. 17, 2017).

As a threshold matter, the Court finds that California law governs plaintiff's fraud claim. The choice of law provision in the Put Agreement only provides that "[t]his

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:23-cv-09055-CAS(JPRx) | Date | April 15, 2024 |
| Title | Tom Lehman v. Medialab AI, Inc. et al. | | |

*Agreement* shall be governed by and construed in accordance with the internal laws of the State of Delaware"; it does not extend to claims independent from the Agreement, such as plaintiff's fraud claim. See Mot. at 11.

The Court finds that plaintiff has pled his fraud claim with sufficient particularity under Rule 9(b). Under California law, "[t]he elements of fraudulent inducement are (1) misrepresentation; (2) knowledge of its falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) damages. Yi v. Circle K Stores, Inc., 258 F. Supp. 3d 1075, 1087 (C.D. Cal. 2017), aff'd, 747 F. App'x 643 (9th Cir. 2019). The Rule 9(b) standard is "relaxed with respect to matters within the opposing party's knowledge." Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993); see also Aquamen Ent., LLC v. Pigmental, LLC, No. CV 17-58-GW(GJSX), 2017 WL 7806619, at *8 (C.D. Cal. May 8, 2017) ("For example, in cases of corporate fraud, plaintiffs will not have personal knowledge of all of the underlying facts."). In such instances, "the particularity requirement is satisfied if the allegations are accompanied by a statement of facts upon which the belief is founded." Galaxia Elecs. Co. v. Luxmax, U.S.A., No. LA-CV-1605144-JAK-GJSX, 2023 WL 2347085, at *22 (C.D. Cal. Feb. 1, 2023).

Here, plaintiff alleges that, "on information and belief, . . . Heyward knew at the time [he] induced [] Lehman to enter into the Put Agreement that MediaLab had promised or would soon promise MediaLab's lenders that MediaLab would not perform its obligations to [] Lehman under the Put Agreement unless MediaLab's EBITDA to debt or to debt payments ratio exceeded a certain threshold." Compl. ¶ 70. He alleges that he was told by plaintiffs, on at least one occasion, that Medialab "could not fund the purchase of [] Lehman's MediabLab shares . . . because its debt covenants [with its lenders] forbit it from doing so[.]" Compl. ¶ 46. This is sufficient to satisfy Rule 9(b)'s particularity requirement.

The Court also finds that the economic loss rule does not bar plaintiff's fraud claim. "[A]n adequately pled promissory fraud claim that induces the formation of a contract is sufficient to trigger the fraudulent inducement exception to the economic loss rule." R Power Biofuels, LLC v. Chemex LLC, No. 16-CV-00716-LHK, 2017 WL 1164296, at *6 (N.D. Cal. Mar. 29, 2017); see also J2 Cloud Servs., Inc. v. Fax87, No. 13-05353 DDP (AJWX), 2016 WL 6833904, at *4 (C.D. Cal. Nov. 18, 2016) (holding that "the economic loss rule cannot preclude [p]laintiffs' promissory fraud claim at [the motion to dismiss stage]"). Here, plaintiff appears to bring a claim for promissory fraud. See Compl. ¶ 70 (alleging that "Heyward knew at the time [he] induced [] Lehman to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        'O'

| Case No. | 2:23-cv-09055-CAS(JPRx) | Date | April 15, 2024 |
|---|---|---|---|
| Title | Tom Lehman v. Medialab AI, Inc. et al. | | |

enter into the Put Agreement that MediaLab had promised or would soon promise MediaLab's lenders that MediaLab would not perform its obligations to [] Lehman under the Put Agreement unless MediaLab's EBITDA to debt or to debt payments ratio exceeded a certain threshold").

Additionally, the Court finds that plaintiff may proceed with his fraud claim against Heyward without pleading "alter ego" liability. Here, plaintiff alleges that "Heyward concealed [the agreement between MediaLab and its lenders] from [] Lehmen when Otin Holdings promised to purchase [] Lehman's MediaLab shares—and MediaLab promised to fund those purchases—in order to induce [] Lehman to agree to enter into the Put Agreement." Compl. ¶ 50. He also alleges that Heyward "knew at the time [he] induced [] Lehman to enter into the Put Agreement that MediaLab had promised or would soon promise MediaLab's lenders that MediaLab would not perform its obligations to [] Lehman under the Put Agreement unless MediaLab's EBITDA to debt or to debt payments ratio exceeded a certain threshold." Id. ¶ 70. Thus, plaintiff has sufficiently alleged direct liability for promissory fraud against Heyward.

### C. Jury Trial Waiver

Plaintiff requested a jury trial in his complaint. Compl. at 17. However, defendants argue that plaintiff waived his right to a jury trial in the Put Agreement. Mot. at 21. Section 15 of the Put Agreement allegedly provides that:

> Each party irrevocably and unconditionally waives any right it may have to a trial by jury in respect of any legal action arising out of or relating to this Agreement or the transactions contemplated hereby. Each party to this Agreement certifies and acknowledges that (a) no representative of any other party has represented, expressly or otherwise, that such other party would not seek to enforce the foregoing waiver in the event of a legal action; (b) such party has considered the implications of this waiver; (c) such party makes this waiver voluntarily; and (d) such party has been induced to enter into this Agreement by, among other things, the mutual waivers and certifications in this Section 15.

Id.

In opposition, plaintiff argues that the Put Agreement's jury trial waiver is invalid. Opp. at 19. He argues that a federal court sitting in diversity must "import . . . state law governing jury trial waivers where . . . state law is even more protective than federal law

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:23-cv-09055-CAS(JPRx) | Date | April 15, 2024 |
|---|---|---|---|
| Title | Tom Lehman v. Medialab AI, Inc. et al. | | |

of the jury trial right." Id. (citing In re County of Orange, 784 F.3d 520, 524 (9th Cir. 2015)).  Plaintiff claims that, under California's choice of law analysis, the Put Agreement's jury waiver provision "violates a fundamental California policy and so is unenforceable."  Id. (citing Rincon EV Realty LLC v. CP III Rincon Towers, Inc., 8 Cal.App.5th 1, 11-18 (2017)).

Seeing as the Put Agreement contains a Delaware choice of law provision, the threshold issue is whether the Section 15 jury trial waiver is governed by Delaware or California law.  California courts apply a two-pronged choice of law test: "(1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law."  Washington Mut. Bank, FA v. Superior Court, 24 Cal. 4th 906, 916 (2001).  If either prong is met, the choice of law will be enforced unless "contrary to a fundamental policy of California" and if California "has a materially greater interest in the determination of the particular issue."  Id. at 917.

The Court finds that California law applies.  Regardless of whether either of the two choice of law prongs is satisfied, the choice of law provision is not enforceable because Delaware law regarding jury waivers is contrary to a fundamental policy of California.  In Delaware, "[a] party may . . . waive [the right to a jury trial] by contract." PVP Aston, LLC v. Fin. Structures Ltd., No. CV-N21C-09095-AML-CCLD, 2022 WL 1772247, at *9 (Del. Super. Ct. May 31, 2022).  However, "California law holds, as a matter of public policy, that a litigant cannot waive its right to a jury trial by entering into a contract that contains a pre-dispute jury trial waiver clause."[2]  In re Cnty. of Orange,

---

[2] While the right to a jury trial is generally a federal procedural issue controlled by federal law, the Ninth Circuit has held that "federal courts sitting in diversity must apply the relevant state law to evaluate the validity of a pre-dispute jury trial waiver *when that law is more protective than federal law*."  In re Cnty. of Orange, 784 F.3d at 531-32.  The Ninth Circuit has additionally acknowledged that, while "the Federal Arbitration Act, 9 U.S.C. §§ 1–19, permits pre-dispute jury trial waivers," the Act "addresses such waivers only in the context of arbitration clauses."  Id. at 529 n.4.  Here, it appears that the Put Agreement does not contain an arbitration clause.  Thus, this Court, "sitting in diversity[,] must apply California's rule on pre-dispute jury trial waivers to [a] contract[] governed by California law."  Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:23-cv-09055-CAS(JPRx) | Date | April 15, 2024 |
|---|---|---|---|
| Title | Tom Lehman v. Medialab AI, Inc. et al. | | |

784 F.3d at 532. Accordingly, the Court finds that Section 15 of the Put Agreement does not bar plaintiff from seeking a jury trial.

### D. Stay of Litigation Pending Arbitration

In the alternative, defendants ask the Court to stay this action until the ongoing arbitration between the parties is complete. Mot. at 21. They contend that the arbitration is "based upon the same nucleus of facts" i.e., two agreements between the parties following the acquisition of plaintiff's company. Id.

In opposition, plaintiff argues that a stay is not warranted because "[r]esolution of [plaintiff's] arbitration claim against MediaLab for breach of his *employment agreement* will not determine the outcome of any claim in this lawsuit, all of which relate in some way to the *Put Agreement*." Opp. at 20 (emphasis added). Thus, there is allegedly "no risk of inconsistent judgments or other reason to stay this action pending resolution of the arbitration." Id.

The Court finds that a stay is not warranted in this case. The ongoing arbitration between the parties appears to be limited to disputes arising out of the Employment Agreement, while this action arises out of the Put Agreement.

### V. CONCLUSION

In accordance with the foregoing, the Court **DENIES** defendant's motion to dismiss and **DENIES** defendant's request for a stay. Additionally, the Court finds that plaintiff has not waived his right to a jury trial.

IT IS SO ORDERED.

|  |  | 00 | : | 17 |
|---|---|---|---|---|
|  | Initials of Preparer | | CMJ | |